FILED
2024 Nov-27  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |
|---|---|
| **CHRISTINA MARTIN; ANNIE FITZGERALD; ABIGAIL VEST; and DORIS J. HOVATER,**<br><br>Plaintiffs,<br><br>v.<br><br>**3M COMPANY, et al.,**<br><br>Defendants. | CASE NO. _____<br><br>JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL

Defendant 3M Company ("3M"), by and through undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court for the Eighth Judicial Circuit, Morgan County, Alabama, to the United States District Court for the Northern District of Alabama, Northeastern Division. As grounds for removal, 3M alleges as follows on personal knowledge as to its own conduct and status and on information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.      Plaintiffs seek to hold 3M and other Defendants liable based on their alleged conduct in manufacturing, using, discharging, and/or disposing of per- and

polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and PFAS-containing products.

2.      Plaintiffs allege that 3M and certain other Defendants manufactured, used, discharged, and/or disposed of PFAS and/or PFAS-containing products at their Decatur, Alabama manufacturing facilities. *E.g.*, Compl. ¶¶ 1, 42-50.   More specifically, Plaintiffs allege that "3M, Daikin, and Toray operate manufacturing facilities located on the Tennessee River in Decatur, Alabama" and that "[f]or decades, these facilities have discharged toxic PFAS chemicals, including PFOA and PFOS, into the Tennessee River and the surrounding environment." *Id.* ¶ 1; *see also id.* ¶ 81 (alleging that "3M's Decatur plant continues to release PFOS into the Tennessee River"); *id.* ¶ 82 (alleging that "3M also disposed of PFOS and PFOA at various dump sites in the Decatur area" and that "[l]eachate from those dump sites has contaminated, and continues to contaminate, groundwater with PFOA and PFOS"); *id.* ¶ 83 (alleging that "[w]aste generated by the Toray and Daikin plants have further contaminated water supplies with PFOA").  Plaintiffs also allege that they are "long-time residents of North Alabama," that they "have unknowingly ingested water contaminated with dangerous levels of the PFAS chemicals released by Defendants," and that "[a]s a result, Plaintiffs have contracted diseases, including thyroid cancer, caused by their exposure to PFOA, PFOS, and other PFAS chemicals." *Id.* ¶¶ 8-9; *see also, e.g.*, *id.* ¶¶ 11-12, 90-93.

3.     Plaintiffs allege that "PFAS has been used in a variety of products, such as non-stick cookware, Scotchgard, bushings and bearings, and Gore-Tex" and that 3M "produced Scotchgard, among other products" at its Decatur, Alabama facility. *E.g.*, Compl. ¶¶ 34, 43.  A product that 3M manufactured at its Decatur, Alabama was PFAS-containing aqueous film-forming foams ("AFFF") that 3M manufactured in accordance with rigorous military specifications ("MilSpec") issued by the Department of Defense ("DoD") and for use by the federal government.  To the extent that Plaintiffs allegedly were injured by ingesting drinking water contaminated with PFAS attributable to 3M's manufacture of PFAS-containing products at the Decatur, Alabama facility, their claims necessarily relate at least in part to MilSpec AFFF. And because Plaintiffs' claims against 3M necessarily relate at least in part to 3M's manufacture of MilSpec AFFF at its Decatur, Alabama facility, 3M is entitled to remove this action as a whole to federal court based on federal officer jurisdiction.

4.     As to the alleged release or disposal of PFAS at issue in this case that plausibly relates to the manufacture of MilSpec AFFF, 3M intends to assert the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies. Corp.*, 487 U.S. 500 (1988), 3M is immune to tort liability for its design and manufacture of MilSpec

AFFF and its provision of warnings for the product.  Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in order to have its federal defense adjudicated in a federal forum.  Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed."  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## **BACKGROUND**

5.    This action was filed on November 12, 2024 in the Circuit Court for the Eighth Circuit, Morgan County, Alabama, bearing Case No. 52-CV-2024-900523.00. Ex. A, State Court File.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 81(a)(2) and 1441(a) because the Circuit Court for the Eighth Judicial Circuit, Morgan County, Alabama, is located within the Northern District of Alabama, Northeastern Division.

6.    3M was served with the Complaint on November 18, 2024.  Removal is timely under 28 U.S.C. § 1446(b).

7.    3M is not required to notify or obtain the consent of any other Defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1).  *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253

(9th Cir. 2006); *Fed. Home Loan Mortg. Corp. v. Crittenden*, 2012 WL 3023264, at *2 (M.D. Ala. June 14, 2012).

8.    Plaintiffs allege that certain Defendants, including 3M, "operate manufacturing facilities located on the Tennessee River in Decatur, Alabama" and "have discharged toxic PFAS chemicals, including PFOA and PFOS, into the Tennessee River and the surrounding environment." Compl. ¶ 1; *see also*, *e.g.*, *id.* ¶¶ 42-50, 81-83. Plaintiffs also allege that they are "long-time residents of North Alabama" and have been injured by "ingest[ing] water contaminated with dangerous levels of the PFAS chemicals released by Defendants." *Id.* ¶¶ 8-9, *see also id.* ¶¶ 11-12, 90-93.

9.    Plaintiffs assert claims against all Defendants, including 3M, for negligence (*id.* ¶¶ 95-101), wantonness (*id.* ¶¶ 102-08), private nuisance (*id.* ¶¶ 109-11), and battery (*id.* ¶¶ 112-17). Plaintiffs assert claims against 3M only for fraudulent concealment (*id.* ¶¶ 118-23).

10.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties to this action, and a copy is being filed with the Clerk of the Circuit Court for the Eighth Judicial Circuit, Morgan County, Alabama.

11.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process,

jurisdiction over the person, or venue; and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12.    3M reserves the right to amend or supplement this Notice of Removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

13.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer.  Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its acts taken pursuant to a federal officer's directions, have a causal nexus with the plaintiff's claims or injuries or are otherwise related to the action; and (d) it can assert a "colorable" federal defense.  *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Isaacson*, 517 F.3d at 135; *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

14.    Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This

is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construed" in favor of removal. *Isaacson*, 517 F.3d at 136.

15.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's alleged injuries are at least in part caused by and/or related to manufacture of products, such as MilSpec AFFF, pursuant to a specification issued by the military. *See, e.g.*, *Cuomo v. Crane Co.*, 771 F.3d 113, 115-117 (2d Cir. 2014) (reversing order remanding case to state court because the requirements of § 1442(a)(1) were met based on evidence that the allegedly defective product was designed pursuant to military specifications); *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL

4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against 3M and other manufacturers of MilSpec AFFF). The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused at least in part by MilSpec AFFF. *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6.[1] Courts also have held that the requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiffs' claimed injuries plausibly are at least in part caused by and/or related to the disposal of waste related to products manufactured at the direction of the federal government. *See, e.g.*, *Illinois ex rel. Raoul v. Monsanto Co.*, No. 22 C 5339, 2023 WL 130525, at *3-4 (N.D. Ill. Jan. 9, 2023); *N.J. Dep't of Env't Prot. v. E.I. Du Pont de Nemours & Co.,* No. 1:19-cv-14765, 2020 WL 2611539, at *4-5 (D.N.J. May 22, 2020). This case is properly removed to this Court.

---

[1] Following removal, 3M intends to designate this action for transfer to the MDL.

A.    **MilSpec AFFF**

16.    Since the late 1960s or early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property.    Indeed, the United States Naval Research Laboratory developed AFFF—its researchers were granted an AFFF-related patent in 1966.[2]  Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

17.    The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4]  All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement.  Prior to such listing, a manufacturer's products are examined, tested, and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying

---

[2] *See* U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.    From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."    All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.  And although in 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."    PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

---

[6] *Id.*

19.    Plaintiffs allege that "PFAS has been used in a variety of products, such as non-stick cookware, Scotchgard, bushings and bearings, and Gore-Tex" and that 3M "produced Scotchgard, among other products" at its Decatur, Alabama facility. *E.g.*, Compl. ¶¶ 34, 43.  A product that 3M manufactured at its Decatur, Alabama facility was PFAS-containing AFFF that 3M manufactured in accordance with rigorous military specifications ("MilSpec") issued by the DoD and for use by the federal government. *See, e.g.*, Ex. B (compilation of letters from the U.S. Navy approving qualification of certain 3M AFFF products manufactured at 3M's Decatur, Alabama plant under MIL-F-24385).  To the extent that Plaintiffs allegedly were injured by ingesting drinking water contaminated with PFAS attributable to 3M's manufacture of PFAS-containing products at the Decatur, Alabama facility, their claims necessarily relate at least in part to MilSpec AFFF. And because Plaintiffs' claims against 3M necessarily relate at least in part to 3M's manufacture of MilSpec AFFF at its Decatur, Alabama facility, 3M is entitled to remove this action as a whole to federal court based on federal officer jurisdiction.  Because Plaintiffs' claims in this case relating to 3M's Decatur, Alabama facility plausibly arise, at least in part, from manufacture and/or disposal of MilSpec products that were required to contain PFAS, 3M is entitled to remove this case as a whole under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). As shown below, all the elements of federal officer jurisdiction are met when a plaintiff asserts claims based

on alleged contamination that is at least in part caused by and/or related to MilSpec products.

20.    Although Plaintiffs purport to "expressly disclaim that they have suffered any damages arising from or associated with AFFF manufacture, use, and/or disposal by any of the named defendants or any other entities," Compl. ¶ 10 n.1; *see also id.* ¶ 94, nevertheless Plaintiffs' claims that they were injured by ingesting drinking water contaminated with PFAS allegedly released by 3M from its Decatur, Alabama facility or "disposed of . . . at various dump sites in the Decatur area" (*e.g.*, *id.* ¶¶ 1, 7-9, 81-82, 84-85) necessarily encompass PFAS related to 3M's manufacture of PFAS-containing MilSpec AFFF at that facility.

## II.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied

### 1. The "Person" Requirement Is Satisfied

21.    The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *accord Isaacson*, 517 F.3d at 135–36.

### 2. The "Acting Under" Requirement Is Satisfied

22.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out the duties or tasks of a federal officer. *Papp*,

842 F.3d at 812.  "The words 'acting under' are to be interpreted broadly . . . ."
*Isaacson*, 517 F.3d at 136 (citation omitted).  Federal courts "have explicitly rejected
the notion that a defendant could only be 'acting under' a federal officer if the
complained of conduct was done at the specific behest of the federal officer or
agency."  *Papp*, 842 F.3d at 813.  Rather, "courts have unhesitatingly treated the
'acting under' requirement as satisfied where a contractor seeks to remove a case
involving injuries arising from equipment that it *manufactured for the government*."
*Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017).

23.    The requirement of "acting under" federal office is met here because
the alleged PFAS contamination of Plaintiffs' drinking water stems in part from
3M's manufacture at the Decatur, Alabama facility of MilSpec AFFF, a vital product
that otherwise "the Government would have had to produce itself."  *Isaacson*, 517
F.3d at 137.  *See also Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as
a "mission-critical" and "lifesaving product" used by all branches of the U.S. armed
forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517
F.3d at 137.  The Naval Research Laboratory states that, "[a]lthough [it] was
responsible for the original concepts and formulations, it was necessary to elicit the
aid of the chemical industry to synthesize the fluorinated intermediates and agents
to achieve improvements in formulations" and that 3M "contributed considerably to

the success of the development of AFFF."[7]   Accordingly, the military has long depended upon outside contractors like 3M to develop and supply AFFF.  *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5 (same for AFFF used at Part 139 airport); MDL Order 3, at 3–6 (same).

24.    In designing, manufacturing and supplying the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, MilSpec AFFF products were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[8]

---

[7] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.
[8] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

### *3. The "Under Color Of Federal Office" Requirement Is Satisfied*

25.     The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between the plaintiff's claims or injuries and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137.[9]  It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer*, 860 F.3d at 258 (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35-36 (1st Cir. 2022); *Papp*, 842 F.3d at 813; *see also Isaacson*, 517 F.3d at 137-38 (holding that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injury occurred while the defendant was performing its official duties).

26.     Courts "credit Defendants' theory of the case" when determining whether the requisite connection exists. *Isaacson*, 517 F.3d at 137. Here, Plaintiffs' claims in this case relating to 3M's Decatur, Alabama facility plausibly arise at least in part from alleged PFAS waste that derived from manufacture of products for which the applicable MilSpec required the use of PFAS to meet the Government's needs. *See supra* ¶¶ 2-3, 19-20. As a result, Plaintiffs' claims against 3M are "for or

---

[9] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction."  *Albrecht*, 2011 WL 5109532, at *5.

relating to" 3M's acts taken under color of federal office. 28 U.S.C. § 1442(a)(1).
*See, e.g.*, *Albritton v. A Clemente, Inc.*, No. 1:22-cv-00397, 2023 WL 2447422, at
*6 (D.N.J. Mar. 10, 2023) (holding that claims against DuPont to recover for alleged
PFAS contamination resulting from waste disposals connected to manufacture of
products for the government during World War II sufficiently related to DuPont's
acts under federal office); *Monsanto Co.*, 2023 WL 130525, at *3 (holding that
claims to recover for alleged contamination resulting from waste disposals
connected to manufacture of products pursuant to military specifications were
sufficiently related to acts under color of federal office because Congress's 2011
amendment of § 1442(a)(1) "broadened the federal officer removal statute to include
actions 'not just causally connected, but alternatively connected or associated with
acts under color of federal office'" (quoting *Baker v. Atl. Richfield Co.*, 962 F.3d
937, 943 (7th Cir. 2020))).

### *4. The "Colorable Federal Defense" Requirement Is Satisfied*

27.    The fourth requirement ("colorable federal defense") is satisfied by
3M's assertion of the government contractor defense.

28.    At the removal stage, a defendant need only show that its government
contractor defense is colorable; that is, "that the defense was 'legitimate and [could]
reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842
F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win

his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)).  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116.[10]  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants."  *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'"  *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

29.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States

---

[10] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

30.    3M has satisfied these elements for purposes of removal.    The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989).    Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.    Those specifications are "reasonably precise," including in requiring the use of PFAS.    In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

31.    With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[11] which could have happened only if Naval Sea Systems Command had first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *In re AFFF Prod. Liab. Litig.*, 2019 WL 2807266, at *3  (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

32.    Regarding the third requirement, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise

---

[11] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014); MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (both available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

environmental or human health issues.[12] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[13] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[14] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent." In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that]

---

[12] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002) (excerpt).

[13] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[14] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

saves lives and protects assets by quickly extinguishing petroleum-based fires."[15] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[16] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . "); *Albritton*, 2023 WL 2447422, at *8 (holding that defendant asserted colorable government contractor defense for clams related to disposal of product manufactured pursuant to federal government specifications and contracts).

33.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation

---

[15] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[16] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

34.    3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries to Plaintiffs that were caused in whole or in part by 3M's compliance with military specifications, Plaintiffs are attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

35.    In the MDL, the court has found based on an extensive factual record that the government contractor defense asserted by 3M and other defendants presents genuine issues of fact for trial. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is by definition better than merely "colorable."

WHEREFORE, 3M hereby removes this action from the Circuit Court for the

Eighth Judicial Circuit, Morgan County, Alabama, to this Court.

DATED: November 27, 2024

/s/ W. Larkin Radney, IV
One of the Attorneys for
Defendant 3M Company

OF COUNSEL:

M. Christian King
Harlan I. Prater, IV
W. Larkin Radney, IV
William H. Morrow
Benjamin P. Harmon
Jacob M. Salow
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
cking@lightfootlaw.com
hprater@lightfootlaw.com
lradney@lightfootlaw.com
wmorrow@lightfootlaw.com
bharmon@lightfootlaw.com
jsalow@lightfootlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record, and that a copy was served via U.S. Mail to the following:

Christopher S. Randolph, Jr.
HARE, WYNN, NEWELL & NEWTON, LLP
800 Shades Creek Parkway, Suite 800
Birmingham, Alabama 35209
(205) 328-5330
chris@hwnn.com

Jason Earley
JENNINGS & EARLEY, PLLC
734 Provence Dr.
Birmingham, Alabama 35242
(501) 960-6401
jason@jefirm.com

Hunter S. Garnett
GARNETT PATTERSON INJURY LAWYERS, LLC
100 Jefferson Street South, Suite 300
Huntsville, Alabama 35801
(256) 539-8686
hunter@gpinjurylaw.com

Toray Fluorofibers (America), Inc.
c/o M. Edward Jamieson
2032 Highway 20
Decatur, Alabama 35601

Daikin America, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104

/s/ W. Larkin Radney, IV
One of the Attorneys for
Defendant 3M Company